UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ALVIN ROBERTS, SHIRLEY ROBERTS, ALFONSO GARCIA, JESSIE HERNANDEZ, ALBERT HUNG, MANUEL A.P. GONZALEZ AND ALLSTATE INSURANCE COMPANY,<br><br>Defendants. | No. 2:11-cv-00740-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Allied Property and Casualty Insurance Company ("Plaintiff") brought this action seeking rescission of a homeowners insurance policy issued to Defendants Alvin and Shirley Roberts ("Defendants") and a declaratory judgment that Plaintiff owes no duty or obligation to defend or indemnify Defendants in a tort action brought against them in Sacramento County Superior Court. On June 20, 2011, the Court stayed the federal action pending resolution of the state court proceedings. Currently before the Court is Plaintiff's Motion to Lift Stay of the federal proceedings. For the reasons set forth below, Plaintiff's Motion to Lift Stay is denied.[1]

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted

1

## BACKGROUND

This action arises from a dispute over insurance coverage and the defense of a tort claim brought in Sacramento County Superior Court ("Underlying Action") against Defendants. (Defs.' Opp'n. to Pl.'s Mot. to Lift Stay at 2, ECF No. 33.) The Underlying Action stems from a fire which took place on September 16, 2008, in a warehouse located on the property owned by Defendants in Galt, California, in which two individuals were killed and property was destroyed. Id. At the time of the fire there was a Rental Dwelling Policy in place ("Allied Policy"), issued by Plaintiff to Defendants, which covered the home located on the Galt property where the warehouse was located. (Pl.'s Mem. of P.&A. in Supp. of Pl.'s Mot. to Lift Stay at 2, ECF No. 30.) Based on the Allied Policy, Plaintiff provided a defense to the Underlying Action on behalf of Defendants, subject to a reservation of rights. (Compl. ¶ 31, ECF No. 2.)

Prior to obtaining the Allied Policy, Defendant had a homeowners insurance policy with Allstate ("Allstate Policy") that purportedly covered both the home that existed on the property and the warehouse. (ECF No. 33 at 4, 10.) The Allstate Policy was in effect from October 3, 2006 to October 3, 2007. Id. at 4. On October 3, 2007, Defendants switched coverage in their homeowners policy to the Allied Policy, after speaking with "Chris" from Meyer & Cook Insurance Agency. Id. The Allied Policy was in effect from October 3, 2007 to October 3, 2008. Id. According to Defendants, "Chris" represented to Defendant Shirley Roberts that the new coverage under the Allied Policy would be the same or better than the Allstate Policy. Id. However, in acquiring the Allied Policy, Defendants did not mention the fact that the warehouse was located on the property, nor that any business activities were taking place on the property. (ECF No. 2 ¶ 14.)

///

///

---

on the briefs.  E.D. Cal. Local Rule 78-230(g).

At the time the fire occurred, the warehouse was being rented to Defendant Jesse Hernandez, who was using the warehouse to store materials and to facilitate his equipment rental business.  (ECF No. 30 at 2.)  The warehouse was also being used by Defendant Albert Hung for storage and to facilitate his artificial flower business.  Id. at 2-3.  Additionally, several people were sleeping in the warehouse and the adjacent trailer at the time of the fire due to the ongoing business operations.  Id. at 3.  Two of the individuals that were sleeping on the premises were killed in the fire and property was destroyed.  Id. at 3.  Defendants Hernandez and Hung are two of the plaintiffs in the Underlying Action, which alleges that Defendants knew or should have known that the warehouse was being used for business purposes.  (ECF No. 33 at 2-3.)  The Defendants have defended the Underlying Action by claiming that they had no knowledge of the business activities.  Id.

## PROCEDURAL HISTORY

On February 18, 2011, Plaintiff filed this action for rescission of the Allied Policy and declaratory relief based on Plaintiff's reservation of rights in the defense of the Underlying Action.  Defendants' Motion to Stay the proceeding was filed on April 26, 2011.  The Court granted the motion on June 20, 2011.  The Court's decision was based in part on the fact that the Court's determination of certain issues—namely, whether Defendants had knowledge of the business operations in the warehouse—could prejudice Defendants in the Underlying Action.  (Mem. and Order Granting Defs.' Mot. to Stay at 8-9, ECF No. 28.)

Plaintiff filed the current motion on June 20, 2013, seeking to lift the stay for the limited purpose of filing a motion for summary adjudication of two coverage defenses.

///
///
///

Specifically, Plaintiff seeks summary adjudication of two issues: (1) whether the warehouse/shop building where the fire took place was the "insured premises" under the subject insurance policy, and (2) whether the exclusion for "bodily injury" or "property damages" "that arises out of the business activity conducted on the insured premises" applies to bar insurance coverage. (ECF No. 30 at 1-2.) Plaintiff argues the Court's adjudication of these issues would not involve the potential conflicts or prejudices that resulted in the stay. (ECF No. 30 at 1-2.) Defendants timely opposed Plaintiff's motion, arguing that the same conflicts and prejudices still apply and that the stay should not be lifted. (ECF No. 33 at 15.)

## STANDARD

A federal district court has broad discretion in deciding whether to issue a stay. Fed. Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989). Indeed, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 863 (9th Cir. 1979). This rule "does not require that the issues in such proceedings are necessarily controlling of the action before the court." Id. at 863-64. Nonetheless, "[w]here it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962). "Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." Id. The corollary to the power to stay an action is "the ability to lift a stay previously imposed."

1  Boyle v. Cnty. of Kern, 1:03-cv-05162 OWW GSA, 2008 WL 220413, at *5 (E.D. Cal.
2  Jan. 25, 2008).
3       Additionally, "district courts possess discretion in determining whether and when
4  to entertain an action" seeking a declaratory judgment. Wilton v. Seven Falls Co.,
5  515 U.S. 277, 282 (1995). "In the declaratory judgment context, the normal principle that
6  federal courts should adjudicate claims within their jurisdiction yields to considerations of
7  practicality and wise judicial administration." Id. at 288.

## ANALYSIS

**A.    Request for Judicial Notice**

Defendants' Opposition to the current motion asks the Court to take judicial notice of several documents from the Underlying Action, including the ex parte application and motion for order to continue the trial date and the order continuing the trial. (Defs.' Req. for Judicial Notice in Supp. of Defs.' Opp'n to Pl.'s Mot. to Lift Stay.)  The Court may take judicial notice of matters of public record. Fed. R. Evid. 201(b)(2); Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001) ("Under Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record.'"). Accordingly, judicial notice of these documents is appropriate.

Defendants also attached a document, which Defendants assert is a portion of the Allstate Policy, to a signed declaration of Defendant Shirley Roberts. Plaintiff objects to this document and asks the Court to strike the document from evidence, as it is not properly authenticated. However, the Court need not, and does not, consider this document in ruling on the instant motion, and therefore the objection is denied as moot.

///
///
///

**B.     Motion to Lift Stay**

A federal court sitting in diversity over a state law claim, as here, shall apply the law of the state where it is located.  U.S. Fidelity and Guar. Co. v. Lee Investments LLC, 641 F.3d 1126, 1133-34 (9th Cir. 2011).  Thus, the Court must apply California law to determine whether lifting the stay previously ordered in this case is appropriate.

Under California law, an insurer's duty to defend the insured is broader than the duty to indemnify, and that duty continues until the underlying lawsuit is resolved or the issue of insurance coverage can be determined without prejudice to the insured.  Montrose Chem. Corp. v. Super. Ct. (Montrose II), 25 Cal. App. 4th 902, 909 (1994).  Plaintiff in this case argues that the while the underlying lawsuit has not yet resolved, the issue of insurance coverage can be determined without prejudice to the insured.

However, California law also states that when an insurer seeks a declaratory judgment regarding the coverage of an insured, and there is an underlying third-party action against the insured, "a stay of the declaratory judgment action pending resolution of the underlying third-party suit is appropriate 'when the coverage question turns on facts to be litigated in the underlying action.'"  Montrose Chem. Corp. v. Super. Ct. (Montrose I), 6 Cal. 4th 287, 301 (1993)).  In particular, "[t]here are three concerns which the courts have about the trial of coverage issues which necessarily turn upon the facts to be litigated in the underlying action."  Haskel, Inc. v. Super. Ct., 33 Cal. App. 4th 963, 979 (1995) (citing Montrose II, 25 Cal. App. 4th at 910).  The first concern is that by bringing the action for a declaratory judgment regarding coverage, the "insurer . . . effectively attacks its insured and thus gives aid and comfort to the claimant in the underlying suit."  Id.  The second concern is that the suit addressing insurance coverage forces the insured to fight a two-front war, thereby "expending precious resources" fighting both the insurer and the third-party action, which "undercuts one of the primary reasons for purchasing liability insurance."  Id.  The third concern is the "real risk that, if the declaratory relief action proceeds to judgment before the underlying action is

resolved, the insured could be collaterally estopped to contest issues in the latter by the results in the former." Id. Thus, "[i]t is only where there is no potential conflict between the trial of the coverage dispute and the underlying action that an insurer can obtain an early trial date and resolution of its claim that coverage does not exist." Id. (emphasis in original).

When issuing the stay in the present case, the Court found that each of the three concerns were present and would prejudice Defendants. (ECF No. 28 at 9.) Specifically, the Court stated that "[f]irst, Plaintiff, who is supposed to be defending Defendants in the underlying tort actions in state court, is effectively attacking Defendants' defenses and counter-claims in the underlying suit." Id. "Second, requiring defendants to litigate the coverage dispute with Plaintiff while the underlying tort actions are still pending would require Defendants to fight a two front war." Id. "Third, in light of Plaintiff's theories for rescission and the claims pending against Defendants in the [U]nderlying [A]ction, there is a real risk that if the declaratory action proceeds to judgment before the [U]nderlying [A]ction is resolved, Defendants could be collaterally estopped to contest issues in the [U]nderlying [A]ction due to findings made by this Court in this lawsuit." Id. The prejudice to Defendants stemmed from a conflict at the heart of both the Underlying Action and the action before the Court—whether Defendants had prior knowledge of the business activities taking place within the warehouse. Id. at 8-9.

Plaintiff asserts that lifting the stay in the present case will not prejudice Defendants because Plaintiff seeks to lift the stay for the limited purpose of allowing Plaintiff to file a summary adjudication on two issues: (1) whether the warehouse/shop building where the fire took place was the "insured premises" under the subject insurance policy, and (2) whether the exclusion for "bodily injury" or "property damages" "that arises out of the business activity conducted on the insured premises" applies to bar coverage. (ECF No. 30 at 1-2.) Plaintiff argues that to adjudicate these two issues, the Court need only determine whether there were business activities taking place in the warehouse prior to the fire, and whether those activities result in the denial of coverage.

(ECF No. 30 at 8.) According to Plaintiff, summary adjudication of these two discrete issues does not require the Court to determine Defendants' knowledge of the business activities. Therefore, Plaintiff contends, adjudication of these issues does not conflict with the Underlying Action and thus there is no prejudice to Defendants. Id.

However, Defendants assert that the Allied Policy should be reformed to replicate the previous Allstate Policy on the property, based on representations made by the insurance agent "Chris" to Defendants. (ECF No. 33 at 1, 4-5, 7.) According to Defendants, extensive discovery will be required to determine the issue of reformation. (ECF No. 33 at 2.)

A contract may be revised through mutual mistake of the parties, or a mistake of one party which the other knew or suspected did not truly express the intention of the parties. Cal. Civ. Code § 3399 (2013). Defendants assert that reformation is appropriate because Defendants were under the mistaken belief that the Allied Policy fully covered the property and the warehouse, as Defendants' previous Allstate Policy had, and because "Chris" either had the same mistaken belief, or knew that Defendants wrongly had that belief. (ECF No. 33 at 4-5.) A similar situation was presented in Beach v. United States Fidelity & Guaranty Company. 205 Cal. App. 2d 409 (1962). There, the court determined that reformation of the contract due to mutual mistake was appropriate because the agent mistakenly failed to provide insurance coverage that he meant to. Similarly, in Modica v. Hartford Accident & Idemnity Co., 236 Cal. App. 2d 588 (1965), the court determined that contract reformation was appropriate based on unilateral mistake, as the insured believed that he was covered and the agent knew the insured held this belief and the agent was aware that the insured was mistaken. While in this case it is unclear what "Chris" knew or did not know, discovery may establish that either "Chris" mistakenly failed to provide that insurance coverage that he intended to provide to Defendants, or that "Chris" knew that Defendants mistakenly believed they had certain coverage. If such facts are established, the Allied Policy may be subject to reformation.

Without determining the merits of the reformation claim, there is at least the possibility that the Allied Policy may be reformed.  If it were determined that contract reformation is appropriate, a potential conflict would then exist because the Allied Policy would be reformed to emulate the Allstate Policy.  The question of whether Defendants knew about the business activities being conducted on the premises would then be brought back to the forefront of the federal action, as under the Allstate Policy, Defendants' knowledge of business activities is key to determining whether the business exception contained in the Allstate Policy is violated.  (ECF No. 33 at 10-13.)  This issue, and the potential conflicts it gives rise to, is the very issue that necessitated the stay in this action.

While this potential conflict between the current action and the Underlying Action is certainly attenuated, there is still a potential for conflict.  That is to say, each of the Court's three concerns would still be present as: (1) by seeking a determination that Defendants had knowledge of the business activities, Allied will have effectively joined forces with the plaintiffs in the Underlying Action; (2) Defendants will be forced to fight a two-front war on the issue of knowledge; and (3) Defendants may be collaterally estopped from asserting the defense of lack of knowledge in the Underlying Action if this Court were to determine that Defendants did in fact have knowledge of the business activities.  The Court does not have to determine that this conflict is likely, only that it potentially exists.  Montrose II, 25 Cal. App. 4th at 910.  Only where there is "no potential conflict" "may" the insurer move forward with the declaratory action.  Id.

To avoid this potential conflict, Plaintiff asks the Court to sever the issue of knowledge and proceed with the case until Defendants' knowledge of the business activities is involved.  While this tactic may resolve the concern that Defendants may be collaterally estopped from arguing the knowledge issue in state court, this tactic does not resolve the remaining concerns.  The parties will still deplete resources to only partially determine the outcome of the issues, with the potential that everything comes to a halt because it becomes evident that Defendants' knowledge is at issue.

Indeed, as Defendants argue, "[i]t would not be fair, and would cause significant prejudice to [Defendants] if they were forced to pursue discovery only regarding the issue of whether the warehouse/shop building is covered as an 'Insured Premises' and not regarding whether coverage is excluded under the 'Business Activities' Exclusion." (ECF No. 33 at 10.)  In short, severing the issues as Plaintiff requests would unnecessarily burden all parties involved by complicating litigation, and, in particular, Defendants because they would still be fighting a two-front war.  For example, if the Court were to limit discovery to certain discrete issues as Plaintiff requests, Defendants would later need to re-do depositions and written discovery, wasting both their own and the Court's resources.

Plaintiff argues that it will be prejudiced if the Court does not lift the current stay, as Plaintiff faces the possibility of defending the Underlying Action only to have this Court later determine that Plaintiff had no duty to defend or indemnify Defendants.  However, in light of the concerns described above, the balance tips in favor of Defendants; the potential prejudice to Defendants far outweighs the potential prejudice to Plaintiff in this case.

Finally, the present case is a declaratory judgment, which the Court has discretion to entertain.  Wilton, 515 U.S. at 282.  The Court must consider the practicality and wisdom of pursuing a declaratory judgment action.  Id.  With this in mind, in addition to the potential prejudice to Defendants, allowing the action to go forward for the limited purpose of Plaintiff's summary adjudication motion would be neither a wise nor practical use of judicial resources.

In light of the above, the Court finds that lifting the stay is inappropriate at this time.  Plaintiff's Motion to Lift Stay is therefore DENIED.

///
///
///
///

## CONCLUSION

For the reasons just stated, Plaintiff's Motion to Lift Stay (ECF No. 30) is DENIED.

IT IS SO ORDERED.

Dated:  September 12, 2013

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT