1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   ALLIED PROPERTY AND CASUALTY            No.  2:11-cv-00740-MCE-KJN
     INSURANCE COMPANY,
12
                      Plaintiff,
13                                           **MEMORANDUM AND ORDER**

           v.
14
     ALVIN ROBERTS, SHIRLEY
15   ROBERTS, ALFONSO GARCIA,
     JESSIE HERNANDEZ, ALBERT
16   HUNG, MANUEL A.P. GONZALEZ
     AND ALLSTATE INSURANCE
17   COMPANY,

18                      Defendants.

19

20         Plaintiff Allied Property and Casualty Insurance Company ("Plaintiff") brought this

21   action seeking rescission of a homeowners insurance policy issued to Defendants Alvin

22   and Shirley Roberts ("Defendants") and a declaratory judgment that Plaintiff owes no

23   duty or obligation to defend or indemnify Defendants in a tort action brought against

24   them in Sacramento County Superior Court.  On June 20, 2011, the Court stayed the

25   federal action pending resolution of the state court proceedings.  Currently before the

26   Court is Plaintiff's Motion to Lift Stay of the federal proceedings.  For the reasons set

27   forth below, Plaintiff's Motion to Lift Stay is denied.[1]

28   _____
            [1] Because oral argument will not be of material assistance, the Court orders this matter submitted

                                                1

1

**BACKGROUND**

2

3        This action arises from a dispute over insurance coverage and the defense of a

4    tort claim brought in Sacramento County Superior Court ("Underlying Action") against

5    Defendants.  (Defs.' Opp'n. to Pl.'s Mot. to Lift Stay at 2, ECF No. 33.)  The Underlying

6    Action stems from a fire which took place on September 16, 2008, in a warehouse

7    located on the property owned by Defendants in Galt, California, in which two individuals

8    were killed and property was destroyed.  Id.  At the time of the fire there was a Rental

9    Dwelling Policy in place ("Allied Policy"), issued by Plaintiff to Defendants, which covered

10   the home located on the Galt property where the warehouse was located.  (Pl.'s Mem. of

11   P.&A. in Supp. of Pl.'s Mot. to Lift Stay at 2, ECF No. 30.)  Based on the Allied Policy,

12   Plaintiff provided a defense to the Underlying Action on behalf of Defendants, subject to

13   a reservation of rights.  (Compl. ¶ 31, ECF No. 2.)

14        Prior to obtaining the Allied Policy, Defendant had a homeowners insurance

15   policy with Allstate ("Allstate Policy") that purportedly covered both the home that existed

16   on the property and the warehouse.  (ECF No. 33 at 4, 10.)  The Allstate Policy was in

17   effect from October 3, 2006 to October 3, 2007.  Id. at 4.  On October 3, 2007,

18   Defendants switched coverage in their homeowners policy to the Allied Policy, after

19   speaking with "Chris" from Meyer & Cook Insurance Agency.  Id.  The Allied Policy was

20   in effect from October 3, 2007 to October 3, 2008.  Id.  According to Defendants, "Chris"

21   represented to Defendant Shirley Roberts that the new coverage under the Allied Policy

22   would be the same or better than the Allstate Policy.  Id.  However, in acquiring the

23   Allied Policy, Defendants did not mention the fact that the warehouse was located on the

24   property, nor that any business activities were taking place on the property.  (ECF No. 2

25   ¶ 14.)

26   ///

27   ///

28   on the briefs.  E.D. Cal. Local Rule 78-230(g).

2

1       At the time the fire occurred, the warehouse was being rented to Defendant Jesse

2 Hernandez, who was using the warehouse to store materials and to facilitate his

3 equipment rental business.  (ECF No. 30 at 2.)  The warehouse was also being used by

4 Defendant Albert Hung for storage and to facilitate his artificial flower business.  Id. at

5 2-3.  Additionally, several people were sleeping in the warehouse and the adjacent trailer

6 at the time of the fire due to the ongoing business operations.  Id. at 3.  Two of the

7 individuals that were sleeping on the premises were killed in the fire and property was

8 destroyed.  Id. at 3.  Defendants Hernandez and Hung are two of the plaintiffs in the

9 Underlying Action, which alleges that Defendants knew or should have known that  the

10 warehouse was being used for business purposes.  (ECF No. 33 at 2-3.)  The

11 Defendants have defended the Underlying Action by claiming that they had no

12 knowledge of the business activities.  Id.

13

14                                      **PROCEDURAL HISTORY**

15

16       On February 18, 2011, Plaintiff filed this action for rescission of the Allied Policy

17 and declaratory relief based on Plaintiff's reservation of rights in the defense of the

18 Underlying Action.  Defendants' Motion to Stay the proceeding was filed on April 26,

19 2011.  The Court granted the motion on June 20, 2011.  The Court's decision was based

20 in part on the fact that the Court's determination of certain issues—namely,  whether

21 Defendants had knowledge of the business operations in the warehouse—could

22 prejudice Defendants in the Underlying Action.  (Mem. and Order Granting Defs.' Mot. to

23 Stay at 8-9, ECF No. 28.)

24       Plaintiff filed the current motion on June 20, 2013, seeking to lift the stay for the

25 limited purpose of filing a motion for summary adjudication of two coverage defenses.

26 ///

27 ///

28 ///

1   Specifically, Plaintiff seeks summary adjudication of two issues: (1) whether the

2   warehouse/shop building where the fire took place was the "insured premises" under the

3   subject insurance policy, and (2) whether the exclusion for "bodily injury" or "property

4   damages" "that arises out of the business activity conducted on the insured premises"

5   applies to bar insurance coverage.  (ECF No. 30 at 1-2.)  Plaintiff argues the Court's

6   adjudication of these issues would not involve the potential conflicts or prejudices that

7   resulted in the stay.  (ECF No. 30 at 1-2.)  Defendants timely opposed Plaintiff's motion,

8   arguing that the same conflicts and prejudices still apply and that the stay should not be

9   lifted.  (ECF No. 33 at 15.)

10

11                                          **STANDARD**

12

13          A federal district court has broad discretion in deciding whether to issue a stay.

14   Fed. Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989).  Indeed, "[a]

15   trial court may, with propriety, find it is efficient for its own docket and the fairest course

16   for the parties to enter a stay of an action before it, pending resolution of independent

17   proceedings which bear upon the case."  Leyva v. Certified Grocers of Cal., Ltd.,

18   593 F.2d 857, 863 (9th Cir. 1979).  This rule "does not require that the issues in such

19   proceedings are necessarily controlling of the action before the court."  Id. at 863-64.

20   Nonetheless, "[w]here it is proposed that a pending proceeding be stayed, the competing

21   interests which will be affected by the granting or refusal to grant a stay must be

22   weighed."  CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962).  "Among these

23   competing interests are the possible damage which may result from the granting of a

24   stay, the hardship or inequity which a party may suffer in being required to go forward,

25   and the orderly course of justice measured in terms of the simplifying or complicating of

26   issues, proof, and questions of law which could be expected to result from a stay."  Id.

27   The corollary to the power to stay an action is "the ability to lift a stay previously

28   imposed."

                                                4

1  Boyle v. Cnty. of Kern, 1:03-cv-05162 OWW GSA, 2008 WL 220413, at *5 (E.D. Cal.

2  Jan. 25, 2008).

3       Additionally, "district courts possess discretion in determining whether and when

4  to entertain an action" seeking a declaratory judgment.  Wilton v. Seven Falls Co.,

5  515 U.S. 277, 282 (1995).  "In the declaratory judgment context, the normal principle that

6  federal courts should adjudicate claims within their jurisdiction yields to considerations of

7  practicality and wise judicial administration."  Id. at 288.

8

9                                    **ANALYSIS**

10

11       **A.       Request for Judicial Notice**

12

13       Defendants' Opposition to the current motion asks the Court to take judicial notice

14  of several documents from the Underlying Action, including the ex parte application and

15  motion for order to continue the trial date and the order continuing the trial.  (Defs.' Req.

16  for Judicial Notice in Supp. of Defs.' Opp'n to Pl.'s Mot. to Lift Stay.)  The Court may take

17  judicial notice of matters of public record.  Fed. R. Evid. 201(b)(2); Lee v. City of L.A.,

18  250 F.3d 668, 689 (9th Cir. 2001) ("Under Fed. R. Evid. 201, a court may take judicial

19  notice of 'matters of public record.'").  Accordingly, judicial notice of these documents is

20  appropriate.

21       Defendants also attached a document, which Defendants assert is a portion of

22  the Allstate Policy, to a signed declaration of Defendant Shirley Roberts.  Plaintiff objects

23  to this document and asks the Court to strike the document from evidence, as it is not

24  properly authenticated.  However, the Court need not, and does not, consider this

25  document in ruling on the instant motion, and therefore the objection is denied as moot.

26  ///

27  ///

28  ///

1         **B.      Motion to Lift Stay**

2

3         A federal court sitting in diversity over a state law claim, as here, shall apply the

4    law of the state where it is located.  U.S. Fidelity and Guar. Co. v. Lee Investments LLC,

5    641 F.3d 1126, 1133-34 (9th Cir. 2011).  Thus, the Court must apply California law to

6    determine whether lifting the stay previously ordered in this case is appropriate.

7         Under California law, an insurer's duty to defend the insured is broader than the

8    duty to indemnify, and that duty continues until the underlying lawsuit is resolved or the

9    issue of insurance coverage can be determined without prejudice to the insured.

10   Montrose Chem. Corp. v. Super. Ct. (Montrose II), 25 Cal. App. 4th 902, 909 (1994).

11   Plaintiff in this case argues that the while the underlying lawsuit has not yet resolved, the

12   issue of insurance coverage can be determined without prejudice to the insured.

13        However, California law also states that when an insurer seeks a declaratory

14   judgment regarding the coverage of an insured, and there is an underlying third-party

15   action against the insured, "a stay of the declaratory judgment action pending resolution

16   of the underlying third-party suit is appropriate 'when the coverage question turns on

17   facts to be litigated in the underlying action.'"  Montrose Chem. Corp. v. Super. Ct.

18   (Montrose I), 6 Cal. 4th 287, 301 (1993)).  In particular, "[t]here are three concerns which

19   the courts have about the trial of coverage issues which necessarily turn upon the facts

20   to be litigated in the underlying action."  Haskel, Inc. v. Super. Ct., 33 Cal. App. 4th 963,

21   979 (1995) (citing Montrose II, 25 Cal. App. 4th at 910).  The first concern is that by

22   bringing the action for a declaratory judgment regarding coverage, the "insurer . . .

23   effectively attacks its insured and thus gives aid and comfort to the claimant in the

24   underlying suit."  Id.  The second concern is that the suit addressing insurance coverage

25   forces the insured to fight a two-front war, thereby "expending precious resources"

26   fighting both the insurer and the third-party action, which "undercuts one of the primary

27   reasons for purchasing liability insurance."  Id.  The third concern is the "real risk that, if

28   the declaratory relief action proceeds to judgment before the underlying action is

1    resolved, the insured could be collaterally estopped to contest issues in the latter by the

2    results in the former." Id.  Thus, "[i]t is only where there is no potential conflict between

3    the trial of the coverage dispute and the underlying action that an insurer can obtain an

4    early trial date and resolution of its claim that coverage does not exist." Id. (emphasis in

5    original).

6         When issuing the stay in the present case, the Court found that each of the three

7    concerns were present and would prejudice Defendants.  (ECF No. 28 at 9.)

8    Specifically, the Court stated that "[f]irst, Plaintiff, who is supposed to be defending

9    Defendants in the underlying tort actions in state court, is effectively attacking

10   Defendants' defenses and counter-claims in the underlying suit." Id.  "Second, requiring

11   defendants to litigate the coverage dispute with Plaintiff while the underlying tort actions

12   are still pending would require Defendants to fight a two front war." Id.  "Third, in light of

13   Plaintiff's theories for rescission and the claims pending against Defendants in the

14   [U]nderlying [A]ction, there is a real risk that if the declaratory action proceeds to

15   judgment before the [U]nderlying [A]ction is resolved, Defendants could be collaterally

16   estopped to contest issues in the [U]nderlying [A]ction due to findings made by this Court

17   in this lawsuit." Id.  The prejudice to Defendants stemmed from a conflict at the heart of

18   both the Underlying Action and the action before the Court—whether Defendants had

19   prior knowledge of the business activities taking place within the warehouse.  Id. at 8-9.

20        Plaintiff asserts that lifting the stay in the present case will not prejudice

21   Defendants because Plaintiff seeks to lift the stay for the limited purpose of allowing

22   Plaintiff to file a summary adjudication on two issues: (1) whether the warehouse/shop

23   building where the fire took place was the "insured premises" under the subject

24   insurance policy, and (2) whether the exclusion for "bodily injury" or "property damages"

25   "that arises out of the business activity conducted on the insured premises" applies to

26   bar coverage.  (ECF No. 30 at 1-2.)  Plaintiff argues that to adjudicate these two issues,

27   the Court need only determine whether there were business activities taking place in the

28   warehouse prior to the fire, and whether those activities result in the denial of coverage.

7

1    (ECF No. 30 at 8.)  According to Plaintiff, summary adjudication of these two discrete

2    issues does not require the Court to determine Defendants' knowledge of the business

3    activities.  Therefore, Plaintiff contends, adjudication of these issues does not conflict

4    with the Underlying Action and thus there is no prejudice to Defendants.  Id.

5            However, Defendants assert that the Allied Policy should be reformed to replicate

6    the previous Allstate Policy on the property, based on representations made by the

7    insurance agent "Chris" to Defendants.  (ECF No. 33 at 1, 4-5, 7.)  According to

8    Defendants, extensive discovery will be required to determine the issue of reformation.

9    (ECF No. 33 at 2.)

10           A contract may be revised through mutual mistake of the parties, or a mistake of

11   one party which the other knew or suspected did not truly express the intention of the

12   parties.  Cal. Civ. Code § 3399 (2013).  Defendants assert that reformation is

13   appropriate because Defendants were under the mistaken belief that the Allied Policy

14   fully covered the property and the warehouse, as Defendants' previous Allstate Policy

15   had, and because "Chris" either had the same mistaken belief, or knew that Defendants

16   wrongly had that belief.  (ECF No. 33 at 4-5.)  A similar situation was presented in

17   Beach v. United States Fidelity & Guaranty Company.  205 Cal. App. 2d 409 (1962).

18   There, the court determined that reformation of the contract due to mutual mistake was

19   appropriate because the agent mistakenly failed to provide insurance coverage that he

20   meant to. Similarly, in Modica v. Hartford Accident & Idemnity Co., 236 Cal. App. 2d 588

21   (1965), the court determined that contract reformation was appropriate based on

22   unilateral mistake, as the insured believed that he was covered and the agent knew the

23   insured held this belief and the agent was aware that the insured was mistaken.  While

24   in this case it is unclear what "Chris" knew or did not know, discovery may establish that

25   either "Chris" mistakenly failed to provide that insurance coverage that he intended to

26   provide to Defendants, or that "Chris" knew that Defendants mistakenly believed they

27   had certain coverage.  If such facts are established, the Allied Policy may be subject to

28   reformation.

1    Without determining the merits of the reformation claim, there is at least the

2    possibility that the Allied Policy may be reformed.  If it were determined that contract

3    reformation is appropriate, a potential conflict would then exist because the Allied Policy

4    would be reformed to emulate the Allstate Policy.  The question of whether Defendants

5    knew about the business activities being conducted on the premises would then be

6    brought back to the forefront of the federal action, as under the Allstate Policy,

7    Defendants' knowledge of business activities is key to determining whether the business

8    exception contained in the Allstate Policy is violated.  (ECF No. 33 at 10-13.)  This issue,

9    and the potential conflicts it gives rise to, is the very issue that necessitated the stay in

10   this action.

11        While this potential conflict between the current action and the Underlying Action

12   is certainly attenuated, there is still a potential for conflict.  That is to say, each of the

13   Court's three concerns would still be present as: (1) by seeking a determination that

14   Defendants had knowledge of the business activities, Allied will have effectively joined

15   forces with the plaintiffs in the Underlying Action; (2) Defendants will be forced to fight a

16   two-front war on the issue of knowledge; and (3) Defendants may be collaterally

17   estopped from asserting the defense of lack of knowledge in the Underlying Action if this

18   Court were to determine that Defendants did in fact have knowledge of the business

19   activities.  The Court does not have to determine that this conflict is likely, only that it

20   potentially exists.  Montrose II, 25 Cal. App. 4th at 910.  Only where there is "no potential

21   conflict" "may" the insurer move forward with the declaratory action.  Id.

22        To avoid this potential conflict, Plaintiff asks the Court to sever the issue of

23   knowledge and proceed with the case until Defendants' knowledge of the business

24   activities is involved.  While this tactic may resolve the concern that Defendants may be

25   collaterally estopped from arguing the knowledge issue in state court, this tactic does not

26   resolve the remaining concerns.  The parties will still deplete resources to only partially

27   determine the outcome of the issues, with the potential that everything comes to a halt

28   because it becomes evident that Defendants' knowledge is at issue.

1   Indeed, as Defendants argue, "[i]t would not be fair, and would cause significant

2   prejudice to [Defendants] if they were forced to pursue discovery only regarding the

3   issue of whether the warehouse/shop building is covered as an 'Insured Premises' and

4   not regarding whether coverage is excluded under the 'Business Activities' Exclusion."

5   (ECF No. 33 at 10.)  In short, severing the issues as Plaintiff requests would

6   unnecessarily burden all parties involved by complicating litigation, and, in particular,

7   Defendants because they would still be fighting a two-front war.  For example, if the

8   Court were to limit discovery to certain discrete issues as Plaintiff requests, Defendants

9   would later need to re-do depositions and written discovery, wasting both their own and

10   the Court's resources.

11          Plaintiff argues that it will be prejudiced if the Court does not lift the current stay,

12   as Plaintiff faces the possibility of defending the Underlying Action only to have this

13   Court later determine that Plaintiff had no duty to defend or indemnify Defendants.

14   However, in light of the concerns described above, the balance tips in favor of

15   Defendants; the potential prejudice to Defendants far outweighs the potential prejudice

16   to Plaintiff in this case.

17          Finally, the present case is a declaratory judgment, which the Court has discretion

18   to entertain.  Wilton, 515 U.S. at 282.  The Court must consider the practicality and

19   wisdom of pursuing a declaratory judgment action.  Id.  With this in mind, in addition to

20   the potential prejudice to Defendants, allowing the action to go forward for the limited

21   purpose of Plaintiff's summary adjudication motion would be neither a wise nor practical

22   use of judicial resources.

23          In light of the above, the Court finds that lifting the stay is inappropriate at this

24   time.  Plaintiff's Motion to Lift Stay is therefore DENIED.

25   ///

26   ///

27   ///

28   ///

**CONCLUSION**

For the reasons just stated, Plaintiff's Motion to Lift Stay (ECF No. 30) is DENIED.

IT IS SO ORDERED.

Dated:  September 12, 2013

MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT

11